THE GEOMETRIC STAMPING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50645.   Filed May 22, 1956.

*Fred R. Tansill, Esq.*, and *Louis Hoppe, Esq.*, for the petitioner.
*Theodore E. Davis, Esq.*, for the respondent.

OPPER, *Judge:* Petitioner's main reliance is upon a supposed estoppel directed against respondent by the conduct of his representatives. While in the view that we take it is unnecessary to pass directly upon this contention it may not be amiss to point out that in addition to the general difficulty of creating an estoppel against respondent as a representative of the sovereign, *James Couzens,* 11 B. T. A. 1040, 1151, there is in this case reasonably clear evidence that petitioner did not rely upon the conduct of which it now complains. By the time any clear-cut attitude on respondent's part had been developed [3] which was with respect to respondent's determination of overassessment for the year 1948, petitioner had already filed a return for 1950, the year now in issue, and paid the tax shown thereby to be due. As we have said, however, it is not the concept of estoppel which in our view must determine the present result.

The rule is not so much that there is a duty of consistency resting upon the Commissioner, which is somewhat doubtful (see *Niles Bement Pond Co.* v. *United States,* 281 U. S. 357; *Mt. Vernon Trust Co.* v. *Commissioner,* (C. A. 2) 75 F. 2d 938, certiorari denied 296 U. S. 587; *Harry C. Fisher,* 29 B. T. A. 1041, 1045, affirmed per curiam (C. A. 2) 74 F. 2d 1014) as that there must be some recognition that the Commissioner's own regulations [4] require consistent treatment by the taxpayer. Where there is a choice of alternative methods of treatment and no suggestion that the method adopted is not permissible from an accounting standpoint consistency of treatment can be of great significance as demonstrating that the method used clearly reflects income. We think it should follow that respondent ought to take account of the extent to which a taxpayer's conduct conforms to respondent's own requirements. See *Maloney* v. *Hammond,* (C. A. 9) 176 F. 2d 780; *R. G. Bent Co.,* 26 B. T. A. 1369, acq. XII-1 C. B. 2.

That petitioner changed its method of reporting, *see Pacific Vegetable Oil Corporation,* 26 T. C. 1, that this change was brought to the attention of the Commissioner's representatives, and that they gave the procedure their tacit approval is reasonably clear from this record. That would be the equivalent and have the effect of

---

[3] Disclosed in respondent's letter to petitioner dated May 26, 1952.
[4] Regulations 111.
SEC. 29.22 (c)–2. VALUATION OF INVENTORIES.—* * *
It follows, therefore, that inventory rules cannot be uniform but must give effect to trade customs which come within the scope of the best accounting practice in the particular trade or business. In order clearly to reflect income, the inventory practice of a taxpayer should be consistent from year to year, and greater weight is to be given to consistency than to any particular method of inventorying or basis of valuation so long as the method or basis used is substantially in accord with these regulations. An inventory that can be used under the best accounting practice in a balance sheet showing the financial position of the taxpayer can, as a general rule, be regarded as clearly reflecting his income.

a formal request on the part of petitioner to change its method of reporting and a formal approval by the Commissioner of that change. *S. Rossin & Sons, Inc.* v. *Commissioner*, (C. A. 2) 113 F. 2d 652, reversing 40 B. T. A. 1273 on another point; *Fowler Brothers & Cox, Inc.*, 47 B. T. A. 103 affd. (C. A. 6) 138 F. 2d 774. It is noteworthy that respondent never contests the propriety of the direct costing method as such. That question is not raised in this proceeding and we do not reach it. The fact that no conditions were imposed so as to reconcile the different methods, a compelling and primary reason for securing the Commissioner's consent, *Gus Blass Co.*, 9 T. C. 15; *Kahuku Plantation Co.* v. *Commissioner*, (C. A. 9) 132 F. 2d 671, is in this case of no significance.

The year as to which respondent's acquiescence in petitioner's changed method of reporting is the clearest is 1948. In that year, which was the third under the new system, a large refund would have been due petitioner had the other method of reporting been adopted. An overassessment was, in fact, first determined by respondent on this theory but when he subsequently refunded only a small part of the overpayment, so as to reach a tax computation in accordance with the new reporting system, petitioner maintained its consistent position, made no protest to the reduced amount of the refund and accepted the determination. It follows that respondent was given the opportunity to make any necessary adjustment in that year and evidently made the only one that was required, which was to reduce the overassessment earlier determined. While we agree with respondent that no such clear-cut situation existed in the years 1946 and 1947, when claimed deficiencies were apparently settled in Tax Court proceedings prior to hearing, we think the conclusion inescapable that as to 1948 respondent's approval was tacitly requested and effectively given for the change in reporting methods.

By 1950, the year now before us, the new method had been uniformly followed by petitioner for 5 years, and by 1955 when the method had been in use for 10 years taxable income was greater in 5 years and less in the other 5 years under the one method than it would have been under the other. The consistency required of taxpayers in reporting their income and the uniformity shown by petitioner consequently results, as is so often the case, in the long-range consequences being no different under one system than under the other. This is at once the theoretical reason and the practical demonstration of the superior significance of consistency where permissible alternatives are involved. See, e. g., *Atlantic Coast Line Railroad Co.*, 4 T. C. 140.

It is no obstacle to this conclusion that under section 41 a taxpayer might appear to be required to do his reporting in accordance with the method of accounting employed in maintaining his books. Conced-

edly this element is absent here. It has been held, however, that such a requirement is not absolute. *R. G. Bent Co., supra; National Airlines, Inc.*, 9 T. C. 159. And we should be most hesitant to say that respondent, where he feels that the method of reporting clearly reflects income, must withhold his approval because such a method is not precisely reflected in the taxpayer's books. There is in fact a tacit assumption that variances between books and returns are bound to occur. Otherwise there would be no reason for the elaborate provision for reconciliation between book entries and return items, which is a part of every corporate return. At any rate, where as here the choice must be made between conformity to a bookkeeping system on the one hand and consistency of reporting on the other, and where respondent's task is not rendered impossible by the complete absence of the figures from the taxpayer's accounting records, we think it more fundamental that the method of reporting be consistent. See *R. G. Bent Co., supra*.

For the reason therefore that what amounted to a request for a change in method of reporting was submitted to and granted by respondent, we conclude that petitioner's method of reporting in the year in controversy was proper and the deficiency is accordingly disapproved.

Reviewed by the Court.

*Decision will be entered for the petitioner.*