T.C. Memo. 2015-196

UNITED STATES TAX COURT

RICHARD BRIAN FRIEDMAN AND SANDRA MADOW FRIEDMAN,
Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7694-13L.                     Filed October 6, 2015.

Richard Brian Friedman and Sandra Madow Friedman, pro sese.

Jane J. Kim, for respondent.

MEMORANDUM OPINION

WELLS, Judge:  Petitioners seek review, pursuant to sections 6330 and

6320, of respondent's determination to proceed with collection of petitioners'

[*2] unpaid income tax liabilities for 2009 and 2010.[1]  We have been asked to decide whether the Appeals Office abused its discretion in refusing to consider petitioners' collection alternative and sustaining respondent's collection action.

The matter is before the Court on respondent's motion for summary judgment, filed pursuant to Rule 121.  Petitioners object to respondent's motion. Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials."  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court will grant summary judgment only if it finds that "there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law."  Rule 121(b).  Respondent, as the moving party, bears the burden of showing that summary adjudication is warranted.  See FPL Grp., Inc. v. Commissioner, 115 T.C. 554, 559 (2000).  We conclude that there is no genuine dispute as to any material fact and that respondent is entitled to judgment as a matter of law sustaining the notice of determination.

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended and as in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]**                                    Background

We set forth the facts taken from the parties' moving papers.  Petitioner husband suffered a physical injury in 2008 followed by a significant diminution in income and employment changes.  Consequently, petitioners filed their 2008, 2009, and 2010 income tax returns with unpaid balances.  Petitioners' 2008 liability was litigated in Friedman v. Commissioner (Friedman I), T.C. Memo. 2013-44.[2]  The instant case involves petitioners' liabilities reported on their 2009 and 2010 income tax returns, filed timely on October 12, 2010, and late on October 26, 2011, respectively.

On February 22, 2012, respondent issued petitioners a Final Notice of Intent to Levy and Notice of Your Right to a Hearing.  On March 2 and 9, 2012, respondent filed notices of Federal tax lien and on March 8, 2012, issued to petitioners a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320.  On March 19, 2012, petitioner husband called respondent and stated he would send a written request for a hearing to be held in Manhattan.  Respondent received petitioners' written request for a hearing on March 21, 2012.

---

[2]The decision was issued after petitioners' face-to-face hearing for the 2009 and 2010 tax liabilities.

**[*4]** On April 24, 2012, petitioners' matter was assigned to Settlement Officer Charlette Jacobi (SO Jacobi) of the Hartford Appeals Office. SO Jacobi noted that on their written hearing request petitioners had checked the boxes for "installment agreement" and "lien subordination". She also noted that petitioners had made a substantial payment on January 18, 2012, which was applied against their 2008 liability. On April 25, 2012, SO Jacobi issued two letters to petitioners acknowledging receipt of their request for a hearing, scheduling a telephone hearing for May 17, 2012, and requesting that they complete a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and provide proof of estimated tax payments for 2011 and 2012.

On May 11, 2012, petitioner husband called SO Jacobi and reiterated his request for a face-to-face hearing to be held in Manhattan. SO Jacobi told him that before she could transfer the case to the Manhattan Appeals Office petitioners had to submit a completed Form 433-A and proof of estimated tax payments. Petitioner husband stated he would fax the Form 433-A the following week. On May 16, 2012, SO Jacobi received a first copy of petitioners' handwritten Form 433-A, backup information she described as "lengthy" and totaling 80 pages, and a second copy of petitioners' Form 433-A with edits handwritten over the first copy's figures.

**[\*5]**  Petitioners' hearing was reassigned to Settlement Officer Seth D. Rose (SO Rose) of the Manhattan Appeals Office on June 26, 2012.  SO Rose noted that the "CIS 433-A was included in the case file with no supporting documents but was unclear".  Despite having no supporting documents, SO Rose noted that petitioner husband's paystub showed no taxes withheld during 2012.

SO Rose sent a letter to petitioners scheduling a face-to-face hearing for July 31, 2012, and requesting the following:  (1) proof of estimated tax payments for 2012; (2) a "neat" page 4 of the Form 433-A; (3) a completed Form 433-A; (4) substantiation for all income and expense items listed on Form 433-A; and (5) the last three months of records for bank statements, mortgage statements, auto payments, investment statements, and rental income.  The items submitted to SO Jacobi the month before had included much of the information requested in items 3, 4, and 5.

On July 6, 2012, petitioner husband called SO Rose to reschedule the hearing.  Because of petitioner husband's and SO Rose's schedules, the earliest the hearing could be scheduled was October 24, 2012.  On October 9, 2012, petitioner husband called SO Rose, who reiterated that petitioners should send an updated financial statement and proof that estimated taxes were paid for 2012 and file the 2011 return by October 15, 2012.

**[*6]** On October 24, 2012, SO Rose and petitioner husband attended the hearing. Petitioner husband provided no new financial statements or proof of estimated tax payments. At that time, SO Rose informed petitioner husband that if petitioners wanted to have the lien subordinated, they had to submit a Form 14134, Application for Certificate of Subordination of Federal Tax Lien. Additionally, SO Rose informed petitioner husband that if petitioners wanted penalties abated for 2009 and 2010, they had to provide an explanation of reasonable cause with respect to their 2009 and 2010 tax liabilities. SO Rose set a November 16, 2012, deadline for petitioners to submit the missing information.

Because of Hurricane Sandy, on November 20, 2012, SO Rose granted petitioners an extension of time to provide the documents but did not set a specific deadline. On February 4, 2013, SO Rose confirmed that petitioners had still not made any estimated tax payments and sent them a final warning letter requesting the missing information within 14 days. It was during this period, on February 11, 2013, that the Court issued its opinion in Friedman I, upholding respondent's notice of determination to proceed with a levy for petitioners' 2008 balance.

Petitioners failed to provide any information regarding their 2009 and 2010 tax liabilities. SO Rose issued the notice of determination on March 6, 2013. In the relevant portions, SO Rose wrote:

[*7] You requested a potential penalty abatement and Lien subordination, but you never sent in any basis or reason documentation to consider these options * * * The Notice of Intent to Levy is sustained because you did not propose a viable collection alternative or provide complete financial information. Moreover, lack of compliance with estimated tax payment requirements renders you ineligible for most collection alternatives, other than full payment.

Petitioners were residents of Connecticut when they timely filed a petition on April 4, 2013. In the petition, petitioners contend that they provided a clear and complete financial statement. Petitioners also contend they had made an estimated tax payment for 2013 but were "unable to pay * * * [their] full tax liability for the years in question and any other years as to which * * * [they] owe taxes" and so intended to rely on wages to make payments toward an offer-in-compromise. Petitioners did not raise the lien subordination or penalty abatement issues in their petition.

## Discussion

Section 6331(a) authorizes the Secretary[3] to levy upon property and property rights of a taxpayer liable for taxes who fails to pay those taxes within 10 days after a notice and demand for payment is made. Section 6331(d) provides that the levy authorized in section 6331(a) may be made with respect to unpaid tax

---

[3]The term "Secretary" means the Secretary of the Treasury or his delegate. Sec. 7701(a)(11)(B).

[*8] only if the Secretary has given written notice to the taxpayer no less than 30 days before the levy. Section 6330(a) requires that the written notice include, inter alia, information about the taxpayer's right to an administrative hearing. Similarly, the Secretary must notify taxpayers of their right to request a hearing within five business days of filing a tax lien. Secs. 6323(a), 6320(a)(1), (3)(B). If the taxpayer requests an administrative hearing, then the hearing is to be conducted by the Appeals Office. Secs. 6330(b)(1), 6320(b)(1).

Section 6330(d)(1) grants this Court jurisdiction to review the administrative determination made by the Appeals Office. If the taxpayer's underlying tax liability is properly in dispute, then the Court will review the determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the underlying tax liability is not in issue, we review the determination for abuse of discretion. Id. at 182; see also Sego v. Commissioner, 114 T.C. 604, 609-610 (2000).

For the reasons discussed below, the underlying liabilities are not in issue in this case. We therefore review the Appeals Office's determination for abuse of discretion. We will reject the determination of the Appeals Office only if the determination was arbitrary, capricious, or without sound basis in fact or law. Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir.

[*9] 2006); Goza v. Commissioner, 114 T.C. at 181-182; Woodral v. Commissioner, 112 T.C. 19, 23 (1999). We do not conduct an independent review and substitute our judgment for that of the Appeals Office. See, e.g., Murphy v. Commissioner, 125 T.C. at 320; Woodral v. Commissioner, 112 T.C. at 23. Instead, we consider whether, in the course of making its determination, the Appeals Office complied with the legal requirements of an administrative hearing.

The relevant procedures for the administrative hearing are set forth in section 6330(c). The Appeals officer must obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1). SO Rose reviewed the law and procedures and determined that the applicable requirements were met.

The Appeals officer must also address any issue raised by the taxpayer at the hearing which is relevant to the unpaid tax or the proposed collection action. Sec. 6330(c)(2)(A). The notice of determination addresses the three issues that petitioners raised in their hearing: (1) a penalty abatement; (2) a lien subordination; and (3) a collection alternative to levy. Respondent alleges and petitioners do not deny that they never submitted any information with respect to a penalty abatement or a lien subordination for their 2009 and 2010 tax liabilities. Additionally, petitioners failed to raise the issues in their petition. Accordingly,

**[\*10]** the penalties and lien subordination are not properly before this Court. <u>See</u> <u>Friedman I</u>, at \*6-\*7.

As to the collection alternative, SO Rose upheld the levy because petitioners "did not propose a viable collection alternative or provide complete financial information" and, in any case, were ineligible because of a "lack of compliance with estimated tax payment requirements". Petitioners allege that they did provide complete financial information and that they made an estimated tax payment for 2013.

We first address the lack of compliance with estimated tax payment requirements. The decision to reject a collection alternative for taxpayers who are delinquent with their estimated tax payments is not an abuse of discretion. <u>Orum</u> <u>v. Commissioner</u>, 412 F.3d 819, 821 (7th Cir. 2005), <u>aff'g</u> 123 T.C. 1 (2004); <u>see</u> <u>also</u> sec. 6159(b)(4)(B) (providing that the Secretary may alter, modify or terminate an installment agreement if the taxpayer fails "to pay any other tax liability at the time such liability is due"). As explained in <u>Orum</u>, it does no good for taxpayers to use money owed for one year to pay another year's tax liability. Elimination of all of a taxpayer's debts can be accomplished only "if current taxes are paid while old tax debts are retired." <u>Orum v. Commissioner</u>, 412 F.3d at 821; <u>see also</u> <u>Cox v. Commissioner</u>, 126 T.C. 237, 258 (2006), <u>rev'd on other grounds</u>,

**[*11]** 514 F.3d 1119 (10th Cir. 2008). Petitioners used funds in 2012 to pay the tax liability incurred for 2008 and did not make estimated tax payments for 2012. Their circumstance precisely illustrates the reasoning behind requiring current compliance before granting collection alternatives.

Petitioners allege that they made an estimated tax payment for their 2013 tax liability but do not specify when this payment was made. They do not allege that any estimated tax payment was made for 2012. Petitioners filed their hearing request during March 2012 and first discussed the need to make estimated tax payments with the Appeals Office in May 2012. Over the next few months, SO Jacobi and SO Rose repeated the need for estimated tax payments in numerous telephone conversations, correspondence, and the face-to-face hearing. There is no evidence that petitioners at any time made an estimated tax payment for 2012. Petitioners did not discuss the payment of their 2012 tax liability with the settlement officers, e.g., whether the 2012 tax liability should be included in a collection alternative.

Petitioners' final deadline to provide proof of estimated tax payments was February 2013, and the notice of determination was issued March 6, 2013. Even if petitioners' 2013 estimated tax payment was made before their February deadline, petitioners did not inform SO Rose of the 2013 estimated tax payment and did not

**[\*12]** discuss how their 2012 tax liability fit into their collection alternative.  It was therefore not an abuse of discretion for SO Rose to reject petitioners' collection alternative because of their noncompliance with estimated tax payment requirements.  Because that is a sufficient basis for upholding the Appeals Office's determination, we need not decide whether the Appeals Office abused its discretion in failing to consider the financial information petitioners submitted during May 2012.

Finally, in making the determination, the Appeals officer must balance the need for the efficient collection of taxes with the concern that collection action be no more intrusive than necessary.  Sec. 6330(c)(3).  SO Rose was required to balance the need for efficient collection of taxes against the intrusiveness of the levy and the lien without the benefit of a full explanation presented by petitioners.  It is also well established that rejecting a collection alternative because of noncompliance with estimated tax payment requirements does not violate the proper balancing requirement.  See, e.g., Orum v. Commissioner, 412 F.3d 819; Schwartz v. Commissioner, T.C. Memo. 2007-155.

Consequently, we hold that the Appeals Office did not abuse its discretion when it issued a notice of determination upholding all of the proposed collection actions.  In reaching these holdings, we have considered all the parties' arguments,

**[*13]** and to the extent not addressed herein, we conclude that they are moot,

irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered for respondent</u>.