130 T.C. No. 11

UNITED STATES TAX COURT

CAPITAL ONE FINANCIAL CORPORATION AND SUBSIDIARIES,
Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 19519-05, 24260-05.  Filed May 22, 2008.

Ps' subsidiaries, Capital One Bank (COB) and
Capital One, F.S.B. (FSB), issuers of Visa and
MasterCard credit cards, earn income from late fees
charged to cardholders who do not timely pay at least
their minimum monthly payment due.  From 1995 to 1997
COB and FSB included the late fees in income when the
fees were charged to cardholders; i.e., when they
accrued under the all events test.

On Aug. 5, 1997, Congress enacted the Taxpayer
Relief Act of 1997, Pub. L. 105-34, sec. 1004, 111
Stat. 911, which codified sec. 1272(a)(6)(C)(iii),
I.R.C.  This provision allows taxpayers who maintain a
pool of debt instruments, such as credit card loans, to
treat certain receivables related to that pool of debt
instruments as creating or increasing original issue
discount (OID).

In 1998 R provided that a taxpayer could receive "automatic consent" to change its method of accounting in accordance with sec. 1272(a)(6)(C)(iii), I.R.C., by filing Form 3115, Application for Change in Accounting Method, with the taxpayer's return. COB submitted Form 3115 with Ps' 1998 return. Ps treated certain credit card receivables as creating or increasing OID on their 1998 and 1999 returns, but they continued to recognize COB's and FSB's late-fee income at the time the fee was charged to the cardholder.

Through this proceeding Ps seek to retroactively treat COB's and FSB's 1998 and 1999 late-fee income under sec. 1272(a)(6)(C)(iii), I.R.C., thereby reducing their taxable income substantially.

Held: COB and FSB were required to obtain consent to change their treatment of credit card receivables to comply with sec. 1272(a)(6)(C)(iii), I.R.C.

Held, further: Neither COB nor FSB received consent to change its treatment of late-fee income on Ps' 1998 or 1999 return.

Held, further: Ps may not retroactively change their treatment of COB's and FSB's 1998 and 1999 late-fee income because the requested change is a change in the treatment of a material item and is therefore an impermissible change in method of accounting under sec. 446(e), I.R.C., and sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs.

Held, further: Ps' motion for partial summary judgment on the late fees issue will be denied, and R's motion for partial summary judgment will be granted.

Jean Ann Pawlow, Elizabeth A. Erickson, Holly K. Hemphill, Kevin Spencer, and Robin L. Greenhouse, for petitioners.

Gary D. Kallevang, James Hill, and Alan R. Peregoy, for respondent.

OPINION

HAINES, <u>Judge</u>:  This case is before the Court on the parties' cross-motions for partial summary judgment filed pursuant to Rule 121.[1]  The issue for decision is whether section 446(e) prohibits Capital One Bank (COB) and Capital One, F.S.B. (FSB), from changing their treatment of late-fee income from the current-inclusion method (when it accrued under the all events test) to a method which allows late-fee income to create or increase original issue discount (OID).[2]

## Background

The parties have stipulated the facts applicable to the issue considered in this Opinion.  Capital One Financial Corp. is a publicly held financial and bank holding company based in McLean, Virginia.  Its principal subsidiaries, COB and FSB, are among the world's largest issuers of Visa and MasterCard credit cards.

During the years at issue COB and FSB earned various types of income from their credit card business, including finance

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code (Code), as amended.  Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

[2]Petitioners' motion applies only to COB because FSB, unlike COB, did not file a Form 3115, Application for Change in Accounting Method, with petitioners' consolidated 1998 return. Respondent's motion applies to COB and FSB.

charges when cardholders carried a balance on their cards, annual fees, overlimit fees when cardholders exceeded their credit limit, cash advance fees when cardholders accessed cash with their cards, and interchange.[3]  Pertinent to these motions for partial summary judgment, COB and FSB also earned income from late fees charged when the cardholder was delinquent in making at least the minimum payment due.  For the years 1995 through 1999, COB and FSB recognized late-fee income at the time the fee was charged to the cardholder for financial accounting purposes as well as tax purposes.  Late-fee income was recognized in the following amounts.

| COB | | FSB | |
|------|------|------|------|
| Year | Late-Fee Income | Year | Late-Fee Income |
| 1995 | $86,620,377 | 1995 | -0- |
| 1996 | 143,520,881 | 1996 | $9,737,796 |
| 1997 | 287,400,477 | 1997 | 20,598,116 |
| 1998 | 510,017,513 | 1998 | 11,926,000 |
| 1999 | 722,277,703 | 1999 | 29,732,338 |
| Total | 1,749,836,951 | Total | 71,994,250 |

---

[3]In addition to the motions for partial summary judgment addressed in this Opinion, petitioners filed a motion for partial summary judgment as to the proper tax treatment of interchange. Interchange is a fee (usually a percentage of the amount charged) that is paid on every credit card transaction to the bank which has issued the card.  Petitioners contend that interchange increases OID under sec. 1272(a)(6)(C)(iii) because the cardholder bears the economic burden of paying interchange. Respondent disagrees and contends that the merchant's bank, not the cardholder, is contractually responsible for paying interchange to the bank which issued the card.

On September 15, 1999, COB submitted Form 3115, Application for Change in Accounting Method, to respondent by attaching it to petitioners' consolidated Federal income tax return for 1998. COB stated on the Form 3115:

> Capital One Bank (COB), a domestic corporation, requests permission under Section 12.02 of Rev. Proc. 98-60 to change its method of accounting for interest and original issue discount that are subject to the provisions of Section 1004 of the Tax Relief Act of 1997.

Petitioners did not treat late-fee income as OID under the Taxpayer Relief Act of 1997 (TRA), Pub. L. 105-34, sec. 1004, 111 Stat. 911 (section 1272(a)(6)(C)(iii)) in 1998 or 1999. They continued to use the current-inclusion method for late-fee income. Petitioners did not attempt to amend their 1998 or 1999 return to treat late-fee income as increasing OID. Petitioners began to treat COB's and FSB's late-fee income as increasing OID on their 2000 return. Respondent has not conceded that petitioners had consent under section 446(e) to make that change.

In response to respondent's notice of deficiency with respect to 1997, 1998, and 1999, petitioners timely filed a petition with this Court. Petitioners subsequently filed their amended petition, claiming they are required to treat late-fee income as increasing OID on their pool of credit card loans, thus reducing their taxable income for 1998 and 1999 by $209,143,757

and \$216,698,486, respectively.[4]  On October 12, 2007, the
parties filed cross-motions for summary adjudication on the late
fees issue.  On December 7, 2007, the parties filed objections to
each other's motions.  A hearing was held on the motions in
Washington, D.C., on January 24, 2008.

Discussion

I.   Change in the Law

On August 5, 1997, Congress enacted TRA sec. 1004, which
added section 1272(a)(6)(C)(iii) to the Code.  Section
1272(a)(6)(C)(iii) has the effect, as explained below, of
requiring taxpayers to treat credit card receivables as creating
or increasing OID on the pool of credit card loans to which the
receivables relate.  Petitioners seek to change their treatment
of COB's and FSB's 1998 and 1999 late-fee income from the
current-inclusion method to a method based on section
1272(a)(6)(C)(iii).

The parties have stipulated that if the Court finds that a
change in the treatment of late-fee income is permissible, then
such income may be treated as creating or increasing OID under
section 1272(a)(6)(C)(iii).  An understanding of that section and

---

[4]Treating late-fee income as OID decreases petitioners'
taxable income because under the current-inclusion method
petitioners recognized late-fee income when a cardholder's
liability for the fee accrued, whereas treating late-fee income
as OID allows recognition to be deferred; i.e., included in
increments over time on the basis of reasonable assumptions
regarding how long it will take a cardholder to pay off the debt.

its application to credit card receivables is helpful to an understanding of the issues in this case.

The holder of a debt instrument with OID generally accrues and includes in gross income, as interest, the OID over the life of the obligation, even though the interest may not be received until the maturity of the instrument. Sec. 1272(a)(1). The amount of OID with respect to a debt instrument is the excess of the stated redemption price at maturity (SRPM) over the issue price of the debt instrument. Sec. 1273(a)(1). The SRPM includes all amounts payable at maturity. Sec. 1273(a)(2). In order to compute the amount of OID and the portion of OID allocable to a period, the SRPM and the time of maturity must be known. This presents a problem for debts such as credit card loans and real estate mortgages that may be satisfied over a very short or a very long period, thus making the time of maturity an unknown at the inception of the debt.

For this reason, special rules were created for determining the amount of OID allocated to a period for certain instruments that may be subject to prepayment. In the case of (1) any regular interest in a real estate mortgage investment conduit (REMIC), (2) qualified mortgages held by a REMIC, or (3) any other debt instrument if payments under the instrument may be accelerated by reason of prepayments of other obligations securing the instrument, the daily portions of the OID on such

debt instruments are determined by taking into account an assumption regarding the prepayment of principal for such instruments.  Sec. 1272(a)(6)(C)(i) and (ii).

Section 1272(a)(6)(C)(iii) applies this special OID rule to any pool of debt instruments the payments on which may be accelerated by reason of prepayments.  It is clear that section 1272(a)(6)(C)(iii) was intended to apply to credit card loans and the related receivables.  See H. Conf. Rept. 105-220, at 522 (1997), 1997-4 C.B. (Vol. 2) 1457, 1992.  What was unclear at the time of enactment and is still not fully resolved is which credit card receivables increase OID under section 1272(a)(6)(C) and which do not.[5]

Rev. Proc. 98-60, app. sec. 12, 1998-2 C.B. 759, 786, provides procedures by which taxpayers may receive "automatic consent" to change their method of accounting for pools of credit card receivables in accordance with section 1272(a)(6)(C).  Under the revenue procedure, automatic consent is achieved by filing Form 3115 with a taxpayer's return.  Id. sec. 6.02, app. sec. 12, 1998-2 C.B. at 765, 786.

When section 1272(a)(6)(C)(iii) was added to the Code, credit card companies could be certain that grace period interest

---

[5]Although the Commissioner has clarified the scope of sec. 1272(a)(6)(C)(iii) by revenue procedures and other published guidance, issues still remain, such as whether interchange income is properly treated as OID.

fell under the new rule. See Rev. Proc. 98-60, app. sec. 12; Staff of Joint Comm. on Taxation, Description and Analysis of Certain Revenue-Raising Provisions Contained in the President's Fiscal Year 1998 Budget Proposal 31-34 (JCS-10-97) (J. Comm. Print 1997). Grace period interest is the interest that accrues from the date of a credit card charge if the balance of a cardholder's account is not paid by the end of the grace period, usually 30 days after the close of a monthly billing cycle.[6] If the cardholder pays the balance within those 30 days, no interest is charged.

The operation of section 1272(a)(6)(C)(iii) with respect to grace period interest is best explained by the following example. Assume the cardholders of a credit card company (a calendar year taxpayer) incur $10 million of charges in December of year 1. Grace period interest will be charged to the cardholders who do not pay their balances in full by January 30 of year 2, the end of their grace period. Before enactment of section 1272(a)(6)(C)(iii), the taxpayer was not required to include any

---

[6]Grace period interest is the equivalent of a finance charge, and is distinct from a late fee. Assume a cardholder with a zero balance at the beginning of a billing cycle charges $1,000 during that cycle and the credit card company calculates a minimum payment due of $100. If the cardholder timely pays $100, he will be liable for grace period interest because the entire balance was not paid in full. If the cardholder timely pays $1,000, no grace period interest will be charged. If the cardholder does not make a timely payment of at least the minimum due, he will be liable for grace period interest and a late fee.

interest income in year 1 with respect to the December charges because it was possible that all the cardholders would pay off their balances by January 30, year 2. Of course, not all cardholders paid their balances within the grace period; thus the taxpayer was permitted to defer grace period interest allocable to December year 1, until year 2.

Under section 1272(a)(6)(C)(iii), the taxpayer is required to make a reasonable assumption as to what portion of the December balances will not be paid off within the grace period and is required to accrue interest income through the end of year 1 with respect to that portion. The taxpayer then adjusts the accrual in the following year to reflect the extent to which the prepayment assumption reflected the actual payments received before expiration of the grace period.[7]

The application of section 1272(a)(6)(C)(iii) to grace period interest causes a taxpayer to recognize income in a taxable year which it previously had deferred to the following year, thus increasing the tax due. The application of section 1272(a)(6)(C)(iii) to other credit card receivables, such as late-fee income, generally has the effect of deferring income to later years which otherwise would be recognized in the year the fee was charged to the cardholder. See supra note 4. Which

---

[7]Petitioners treated COB's and FSB's 1998 and 1999 grace period interest under sec. 1272(a)(6)(C)(iii).

receivables are eligible for this treatment has been the subject of contention.

Respondent has conceded that cash advance fees generally increase OID under section 1272(a)(6)(C)(iii).[8]  See Rev. Proc. 2005-47, 2005-2 C.B. 269.  When a cardholder repays the loan (the amount of cash advanced), the cardholder will also pay the cash advance fee.  Thus, the SRPM is the amount of the loan plus the fee.  As the SRPM is greater than the issue price (the amount of the loan), there is OID on the transaction.  Before 1998 petitioners treated COB's and FSB's cash advance fee income as increasing OID.  For 1998 and 1999 petitioners continued to treat cash advance fee income as increasing OID under section 1272(a)(6)(C)(iii).  Respondent concedes this treatment is proper.

Respondent has taken the position that overlimit fees paid by a cardholder to a credit card company increase OID.  Tech. Adv. Mem. 2005-33023 (Aug. 19, 2005).  Before 1998 petitioners treated overlimit fees under the current-inclusion method. Petitioners treated COB's and FSB's 1998 and 1999 overlimit fee

---

[8]To treat cash advance fees as increasing OID, the taxpayer must be able to demonstrate that the amount of the fee is separately stated on the cardholder's account and that the fee is not charged for property or specific services performed by the taxpayer for the benefit of the cardholder.  Rev. Proc. 2005-47, sec. 5, 2005-2 C.B. 269, 270.

income as increasing OID under section 1272(a)(6)(C)(iii).
Respondent concedes this treatment is proper.[9]

In contrast to overlimit fees and cash advance fees, the parties agree that annual fees may not be treated as increasing OID under section 1272(a)(6)(C)(iii). Annual fees are charged to the cardholder for all of the benefits and services available under the credit card agreement, and not for any specific service. Rev. Rul. 2004-52, 2004-1 C.B. 973. Therefore, annual fees are compensation for services and not for the use or forbearance of money. Thus, they are not interest and do not increase OID.

Whether interchange increases OID under section 1272(a)(6)(C)(iii) is the subject of petitioners' separate motion for partial summary judgment which is still before the Court. Petitioners treated COB's and FSB's 1998 and 1999 interchange income as increasing OID under section 1272(a)(6)(C)(iii). Respondent has taken the position that interchange income does not increase OID. See Tech. Adv. Mem. 2005-33023 (Aug. 19, 2005).

Respondent has conceded that as a general proposition credit card late-fee income may be treated as increasing OID on the pool

---

[9]Although respondent has conceded petitioners' treatment of cash advance fees and overlimit fees is proper, respondent has not conceded that petitioners correctly calculated the amount includable.

of credit card loans to which the income relates.[10]  Rev. Proc. 2004-33, 2004-1 C.B 989.  From 1995 through 1999 petitioners treated COB's and FSB's late-fee income under the current-inclusion method.  The issue in these motions is whether section 446(e) prohibits a retroactive change in the treatment of the 1998 and 1999 late-fee income from the current-inclusion method to a method based on section 1272(a)(6)(C)(iii).

II.  Section 446(e)

Section 446(e), at issue in this case, provides:

> SEC. 446(e).  Requirement Respecting Change of Accounting Method.--Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary.

The purpose of the section 446(e) consent requirement is to assure consistency in the method of accounting used for tax purposes and thus prevent distortions of income which usually accompany a change of accounting method and which could have an adverse effect upon the revenue.  See Commissioner v. O. Liquidating Corp., 292 F.2d 225, 231 (3d Cir. 1961), revg. T.C.

---

[10]To treat late fees as increasing OID, the taxpayer must be able to demonstrate that the amount of the late fee is separately stated on the cardholder's account and that the late fee is not charged for property or specific services performed by the taxpayer for the benefit of the cardholder.  Rev. Proc. 2004-33, sec. 5, 2004-1 C.B. 989, 990.

Memo. 1960-29; Casey v. Commissioner, 38 T.C. 357, 386-387 (1962); Wright Contracting Co. v. Commissioner, 36 T.C. 620, 634 (1961), affd. 316 F.2d 249 (5th Cir. 1963); Advertisers Exch., Inc. v. Commissioner, 25 T.C. 1086, 1092-1093 (1956), affd. per curiam 240 F.2d 958 (2d Cir. 1957). In part, the consent requirement is also intended to lessen the Commissioner's burden of administering the Code. See Lord v. United States, 296 F.2d 333, 335 (9th Cir. 1961); Casey v. Commissioner, supra at 386. This Court identified the following as the policy reasons served by section 446(e): "'(1) To protect against the loss of revenues; (2) to prevent administrative burdens and inconvenience in administering the tax laws; and (3) to promote consistent accounting practice thereby securing uniformity in collection of the revenue.'" FPL Group, Inc. & Subs. v. Commissioner, 115 T.C. 554, 574 (2000) (quoting Barber v. Commissioner, 64 T.C. 314, 319-320 (1975)).

By requiring the taxpayer to obtain the Commissioner's consent before changing its method of accounting, section 446(e) gives the Commissioner authority to approve or disapprove such changes prospectively. This Court has stated that the Commissioner also has discretion to accept or reject a request for a retroactive change in a taxpayer's choice between two permissible methods of computing taxable income. See Barber v. Commissioner, supra at 318.

If the Commissioner, acting within his discretion, does not consent to the taxpayer's request to make a change in the taxpayer's method of computing taxable income, the taxpayer is required to continue computing taxable income under the taxpayer's old method of accounting.  See, e.g., United States v. Ekberg, 291 F.2d 913, 925 (8th Cir. 1961); Schram v. United States, 118 F.2d 541, 543-544 (6th Cir. 1941); Drazen v. Commissioner, 34 T.C. 1070, 1075-1076 (1960) (and the cases cited threat); Advertisers Exch., Inc. v. Commissioner, supra at 1092-1093.  If the taxpayer changes the method of accounting used in computing taxable income without first obtaining consent, the Commissioner can assert section 446(e) and require the taxpayer to abandon the new method of accounting and to report taxable income using the old method of accounting.  See, e.g., Commissioner v. O. Liquidating Corp., supra; Drazen v. Commissioner, supra at 1076; Advertisers Exch., Inc. v. Commissioner, supra at 1093.

In deciding whether to consent to a change of accounting method, the Commissioner is invested with wide discretion.  See, e.g., Commissioner v. O. Liquidating Corp., supra at 231; Capitol Fed. Sav. & Loan Association & Sub. v. Commissioner, 96 T.C. 204, 213 (1991); Drazen v. Commissioner, supra at 1076.  In a case in which the taxpayer has requested the Commissioner's consent to change methods of accounting, the Commissioner's action in

refusing to give consent is reviewed under an abuse of discretion standard.  See Schram v. United States, supra at 544; Capitol Fed. Sav. & Loan Association & Sub. v. Commissioner, supra at 213; S. Pac. Transp. Co. v. Commissioner, 75 T.C. 497, 681 (1980).

In a case in which the taxpayer does not first obtain the Commissioner's consent, such as where the taxpayer attempts in a court proceeding to retroactively alter the manner in which the taxpayer accounted for an item on its tax return, the question is whether the change constitutes a change of accounting method that is subject to section 446(e).  See S. Pac. Transp. Co. v. Commissioner, supra at 682; Wright Contracting Co. v. Commissioner, supra at 635-636; cf. Poorbaugh v. United States, 423 F.2d 157, 163 (3d Cir. 1970); Hackensack Water Co. v. United States, 173 Ct. Cl. 606, 352 F.2d 807 (1965); FPL Group, Inc. & Subs. v. Commissioner, supra at 573-575.  If the change constitutes a change of accounting method that is subject to section 446(e), then the taxpayer is foreclosed from making the change by section 446(e) and the regulations promulgated thereunder without regard to whether the new method would be proper.  See S. Pac. Transp. Co. v. Commissioner, supra at 682; Wright Contracting Co. v. Commissioner, supra at 635-636.

III. <u>Whether Consent Is Required Under Section 1272(a)(6)(C)(iii)</u>

As a preliminary matter, the Court must address whether taxpayers are required to obtain consent in order to change their method of accounting to comply with section 1272(a)(6)(C)(iii). Petitioners argue that Congress provided that a taxpayer did not need consent to change its method of accounting to comply with section 1272(a)(6)(C)(iii). TRA sec. 1004(b)(2) provides:

> (2)Change in method of accounting.--In the case of any taxpayer required by this section to change its method of accounting for its first taxable year beginning after the date of the enactment of this Act--
>
> (A) such change shall be treated as initiated by the taxpayer,
>
> (B) such change shall be treated as made with the consent of the Secretary of the Treasury, * * *

The Court must read this provision, which was not codified, with section 446(e) and the regulations promulgated thereunder, which require a taxpayer to secure consent before adopting a new method of accounting by filing Form 3115 and setting forth the classes of items that will be treated differently.[11] Sec. 1.446-1(e)(3)(i), Income Tax Regs.

Section 446(e) begins with the qualification: "Except as otherwise expressly provided in this chapter". Nothing in section 1272(a)(6)(C)(iii) expressly provides that a taxpayer is not required to receive consent to change its method of

---

[11]Petitioners have not challenged the validity of the sec. 446 regulations.

accounting. TRA sec. 1004(b)(2) was not codified and therefore does not qualify as an exception to section 446(e).

Nevertheless, if that provision had been codified, taxpayers would still be required to follow the applicable procedures in order to effect a change in accounting method. Language similar to that of TRA sec. 1004(b)(2) has been used in other provisions of the Code. The manner in which taxpayers change their method of accounting under those provisions informs the Court's interpretation of TRA.

Section 448(a) bars C corporations and partnerships if one or more partners is a C corporation from using the cash method of accounting. Exceptions apply to this prohibition. See sec. 448(b). For example, entities with annual gross receipts of $5 million or less may use the cash method. Sec. 448(b)(3), (c). If section 448 forces a taxpayer off the cash method, such as a C corporation that no longer meets the gross receipts test, the mandatory adoption of another method (presumably the accrual method) is a change in method of accounting generally requiring consent. Section 448(d)(7) provides:

> (7) Coordination with section 481.-- In the case of any taxpayer required by this section to change its method of accounting for any taxable year--
>
> > (A) such change shall be treated as initiated by the taxpayer,
> >
> > (B) such change shall be treated as made with the consent of the Secretary, * * *

Nevertheless, a taxpayer forced to change its method of accounting under section 448 must still file a Form 3115 with its return for the year of change.  Sec. 1.448-1(h)(2), Income Tax Regs.  If the Form 3115 is not filed timely, a taxpayer forced off the cash method must comply with the requirements of section 1.446-1(e)(3), Income Tax Regs., in order to secure the consent of the Commissioner.  Sec. 1.448-1(h)(4), Income Tax Regs.  Pursuant to section 1.446-1(e)(3), Income Tax Regs., a taxpayer requesting to change its method of accounting is required to file a Form 3115 during the year in which it intends to make the change.  In effect, the filing of a Form 3115 is a request for a ruling from the Commissioner.  Sunoco, Inc. & Subs. v. Commissioner, T.C. Memo. 2004-29; see Capitol Fed. Sav. & Loan Association & Sub. v. Commissioner, 96 T.C. at 211; sec. 601.204(c), Statement of Procedural Rules.  The issuance of such a ruling is a matter within the Commissioner's discretion. Capitol Fed. Sav. & Loan Association & Sub. v. Commissioner, supra at 212.

Timely notification of an accounting method change prevents the loss of tax revenue because the Commissioner may then ensure that appropriate adjustments are made to the taxpayer's taxable income in accordance with section 481.  Without notification, the Commissioner would be unaware that such adjustments are necessary.  Furthermore, timely notification prevents

administrative burdens and inconvenience in administering the tax laws and promotes consistent accounting practice, thereby securing uniformity in collection of the revenue.  See FPL Group, Inc. & Subs. v. Commissioner, 115 T.C. at 574.

Section 448 and the regulations promulgated thereunder illustrate that when the law provides that a change is treated as made with consent, the taxpayer must still comply with the applicable procedures in order to effect the change.  If the taxpayer does not file a timely Form 3115, automatic consent will not be granted.  Sec. 1.448-1(h)(4), Income Tax Regs.  It follows that if the taxpayer files an incomplete or otherwise deficient Form 3115, automatic consent will not be granted.  This would be especially true when the change in accounting method is more complex than the change envisioned by section 448 (a change from the overall cash method to the overall accrual method).

In the light of the purposes for requiring notification to the Commissioner of a taxpayer's change in method of accounting, the Court holds that petitioners were required to follow all applicable procedures put in place by respondent in order to receive consent to change their method of accounting to comply with section 1272(a)(6)(C)(iii).  See Rev. Proc. 98-60, 1998-2 C.B. 759.  Failure to follow those procedures would negate automatic consent to the proposed change.

IV.    The Meaning of "Item"

The parties dispute the meaning of "item" as it is used in section 1.446-1(e), Income Tax Regs.  Section 1.446-1(e)(2)(ii)(a), Income Tax Regs., provides:

> A change in the method of accounting includes a change in the overall plan of accounting for gross income or deductions or a change in the treatment of any material item used in such overall plan.  Although a method of accounting may exist under this definition without the necessity of a pattern of consistent treatment of an item, in most instances a method of accounting is not established for an item without such consistent treatment.  A material item is any item which involves the proper time for the inclusion of the item in income or the taking of a deduction. * * *

The dispute arises because COB requested permission to change its method of accounting for "interest and OID that are subject to the provisions of section 1004 of the Taxpayer Relief Act of 1997."  Petitioners contend that the relevant item is interest, including OID, and by using that description COB obtained consent to change its treatment of late-fee income, a "component" of interest, including OID.  Respondent contends that the relevant item is late-fee income.  Respondent further argues that the description used by COB is ambiguous at best and that because COB did not apply the OID rules to late-fee income on its return for 1998 or 1999, COB did not obtain consent to change the treatment of late-fee income.  See infra V.

The meaning of "item" is also important to our discussion, infra VI, regarding whether a change in the treatment of late-fee

income is a change in the treatment of a material item.  See sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs.  Whether an item is material is a question of timing, but before determining materiality we must know which item to address, interest or late-fee income.

Petitioners contend that the references to "item" throughout section 1.446-1(e), Income Tax Regs., mean an "item of income or deduction".  "Items of income" are listed in section 61.  Under petitioners' theory, because item means item of income, under Gitlitz v. Commissioner, 531 U.S. 206 (2001), the Court must look to section 61 to determine what an item is.  Petitioners give the Supreme Court's holding in Gitlitz far too much weight.  Gitlitz involved the effect of discharge of indebtedness income on the basis of S corporation stock, not the ability of an entity to change its method of accounting.  The Court addressed the Commissioner's argument that the discharge of indebtedness of an insolvent S corporation was not an "item of income".  Id. at 212. To resolve the issue, the Court looked to section 61, which provides that discharge of indebtedness is generally included in gross income.  Id. at 213.  The Court did not address how narrow an item of income may be or whether a specific type of discharge of indebtedness is also an item under section 1.446-1(e), Income Tax Regs.

The regulations promulgated under section 446(e) make frequent reference to the broad term "item" and the narrower term "material item".  "Material items" are necessarily a subset of the broader group "items".  Courts have identified a variety of "material items", all of which are narrower than the broad items of income listed in section 61.  For example, courts have found the following to be material items:  (1) Commissions from a particular insurance company, Leonhart v. Commissioner, T.C. Memo. 1968-98, affd. 414 F.2d 749 (4th Cir. 1969); (2) the treatment of automated teller machine replacement modules, Diebold, Inc. v. United States, 891 F.2d 1579, 1583 (Fed. Cir. 1989); (3) gain from sales of automotive inventory, Huffman v. Commissioner, 126 T.C. 322, 343 (2006), affd. 578 F.3d 357 (6th Cir. 2008); (4) the treatment of natural gas as "working gas" (inventory) or "cushion gas" (capital asset), Pac. Enters. v. Commissioner, 101 T.C. 1, 23 (1993); (5) the treatment of costs as a repair expense or as depreciable, FPL Group, Inc. & Subs. v. Commissioner, 115 T.C. 554 (2000); (6) a change in depreciation method resulting from a change from section 1250 property to section 1245 property, Standard Oil Co. (Indiana) v. Commissioner, 77 T.C. 349, 410 (1981); and (7) overburden removal costs under section 616(a), Sunoco, Inc. & Subs. v. Commissioner, T.C. Memo. 2004-29.  See also sec. 1.446-1(e)(2)(iii), Example (2), Income Tax Regs. (real estate taxes are a material item);

sec. 1.446-1(3)(2)(iii), Example (6), Income Tax Regs. (allocation of overhead to value of inventory is a material item). The preceding examples fall within the narrow group "material items" and therefore must also be "items".

An item under section 1.446-1(e), Income Tax Regs., may be narrower than the broad items of income listed in section 61. Whether particular income is an "item" under section 1.446-1(e), Income Tax Regs., depends on all the facts and circumstances surrounding that income. COB and FSB earned most of their income from interest and items deemed to be interest for Federal tax purposes.

A taxpayer is required to obtain the Commissioner's consent before making changes to the treatment of a material item used in its overall plan of accounting. Sec. 1.446-1(e)(2), Income Tax Regs. Under petitioners' theory, because late-fee income, and presumably other credit card receivables, are not "items" themselves, but are merely components of the "item" of interest, they would also not be "material items." Consequently, petitioners could make changes to these "components" of interest without first receiving respondent's consent.

Defining item in this way would severely undermine the reasons for section 446(e). In 1998 and 1999 COB and FSB earned late-fee income of $521,943,513 and $752,010,041. They earned more in late-fee income than any other type of fee. In 1998

COB's and FSB's late-fee income accounted for approximately 22 percent of the gross receipts and 15 percent of the total income reported on petitioners' consolidated return.  Late fees are earned for reasons independent of the reasons other types of income are earned, such as finance charges, overlimit fees, interchange, and cash advance fees.  Late fees are a separate and distinct item of income.  In this context, the Court holds that the relevant item for purposes of section 1.446-1(e), Income Tax Regs., is late-fee income.

V.   Whether COB Received Consent To Change Its Treatment of Late-Fee Income

Having found that the relevant item is late-fee income, we must determine whether COB received consent to change its treatment of late-fee income by requesting permission to change its treatment of "interest and OID that are subject to the provisions of section 1004 of the Taxpayer Relief Act of 1997." Petitioners argue the description is sufficient to obtain consent to change COB's treatment of late-fee income.  Petitioners further argue that since COB received consent, they may now fix their error in failing to implement the change.  Respondent argues COB's description of the item to be changed was ambiguous at best and that because COB did not apply the OID rules to late-fee income on its 1998 or 1999 return, it did not obtain consent to change its treatment of late-fee income.

In response to the enactment of section 1272(a)(6)(C)(iii), the Commissioner set forth the procedures by which consent would be given to a taxpayer to change its method of accounting. Rev. Proc. 98-60, 1998-2 C.B. 759. Specifically, a taxpayer was required to file Form 3115 with its return. Id. COB filed a Form 3115 which stated:

> Capital One Bank (COB), a domestic corporation, requests permission under Section 12.02 of Rev. Proc. 98-60 to change its method of accounting for interest and original issue discount that are subject to the provisions of Section 1004 of the Tax Relief Act of 1997.

Question 9 on Form 3115 states:

> If the applicant is not changing its overall method of accounting, attach a description of each of the following:
>
>> a.   The item being changed.
>>
>> b.   The applicant's present method for the item being changed. * * *

In response COB stated:

> Question 9a
>
> The taxpayer proposes to change its method of accounting for interest and original issue discount that are subject to the provisions of Section 1004 of the Taxpayer Relief Act of 1997 (Pub. L. 105-34).
>
> Question 9b
>
> Credit card obligations are not currently accounted for as required by section 1272(a)(6) of the Internal Revenue Code. The taxpayer's present method of account[ing] for credit card obligations is to take into account the differences between issue price and stated principal amount upon origination in certain

cases.  Cash advance fees are taken into account as original issue discount.

In accordance with Rev. Proc. 98-60, app. sec. 12.02(a), COB also stated:

<u>Additional Requirements</u>

> Pursuant to Section 12.02 of Rev. Proc. 98-60, the taxpayer makes the following representations.  The pool of debt instruments consists of all credit card receivables held by the taxpayer.  The proposed method is to account for interest and OID as required by Section 1272(a)(6).  The prepayment assumption on the pool is the actual rate at which payments occur on the whole pool in the succeeding months.  The amount of grace period interest included is determined using the same assumption used for book purposes.  Cash advance fees continue to be accounted for as original issue discount.

The Form 3115 did not mention late fees.  On petitioners' consolidated 1998 return filed with the Form 3115, they treated COB's income from overlimit fees, cash advance fees, and interchange as increasing OID on its pool of credit card loans under section 1272(a)(6)(C).  On their returns for 1998 and 1999 petitioners did not treat COB's late-fee income as increasing OID but instead continued to recognize late-fee income at the time it was charged to the cardholder.

As discussed previously, the relevant item in this context is late-fee income.  Neither Rev. Proc. 98-60, <u>supra</u>, nor COB's Form 3115, nor petitioners' 1998 or 1999 return gave any indication that late-fee income would be treated as OID.  The language used in COB's application to change its method of

accounting was ambiguous and vague.  The ambiguities in COB's description of the item to be changed were clarified by the treatment of the respective fees on petitioners' consolidated returns.  The Court therefore finds that COB did not receive consent to change its treatment of late-fee income for 1998 or 1999.  In fact, by failing to mention late fees or to account for late fees as OID on the returns for those years, COB did not seek consent for the change.[12]  Even though petitioners began to treat late-fee income as increasing OID with their 2000 return, they made no effort to change their treatment of late-fee income for 1998 and 1999 until they filed a motion to amend their petition in May 2006.[13]

---

[12]Petitioners contend that if respondent did not consent to COB's 1999 request to change its method of accounting for late-fee income, then that refusal constituted an abuse of discretion. Because COB did not make clear to respondent that it was requesting permission to change its method of accounting for late-fee income, petitioners' contention is unpersuasive.

[13]Even if COB had been given consent to change its accounting method for late-fee income with its 1999 return, the Court doubts that COB would be entitled to correct its error in implementation.  By failing to implement the change and continuing to treat late-fee income under the current-inclusion method for 1998 and 1999, COB did not adopt the OID method for late-fee income.  The "error" petitioners would be attempting to correct would be a total failure to implement the accounting method, not a mere correction of an adopted method.  It is doubtful that such a correction would be permissible under sec. 446.  See Standard Oil Co. (Indiana) v. Commissioner, 77 T.C. 349, 383-384 (1981) (although sec. 446 is inapplicable where certain intangible drilling costs are treated improperly, sec. 446 may be applicable where all intangible drilling costs are treated improperly).  A correction of that nature would likely be
(continued...)

VI.  Whether Recharacterization of Late-Fee Income as OID Is a Prohibited Change in Petitioners' Method of Accounting

Petitioners argue that if COB did not receive consent, it is still entitled to change its treatment of late-fee income because it is not changing its treatment of a material item and is therefore not changing its method of accounting.[14]  See sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs.  We have determined that the relevant item is late-fee income; now we must determine whether a change in the treatment of late-fee income would be material as that term is used in section 1.446-1(e)(2)(ii)(a), Income Tax Regs.  If the recharacterization of late-fee income is material, petitioners will be foreclosed from making the change by section 446(e) and the regulations promulgated thereunder without regard to whether the new method would be proper.  See S. Pac. Transp. Co. v. Commissioner, 75 T.C. at 682; Wright Contracting Co. v. Commissioner, 36 T.C. at 635-636.

A.  The Regulations

Before a taxpayer changes its method of accounting, it must secure the consent of the Commissioner.  Sec. 446(e); sec. 1.446-1(e)(2)(i), Income Tax Regs.  The Code does not define the phrase

_____

[13](...continued)
a prohibited change in method of accounting under sec. 1.446-1(e), Income Tax Regs.

[14]Petitioners' motion applies only to COB, but their argument on this subissue is equally applicable to FSB.  Respondent's motion applies to both COB and FSB.

"method of accounting". The Court has held that the phrase includes "the consistent treatment of any recurring, material item, whether that treatment be correct or incorrect." See Bank One Corp. v. Commissioner, 120 T.C. 174, 282 (2003), affd. in part and vacated in part sub nom. J.P. Morgan Chase & Co. v. Commissioner, 458 F.3d 564 (7th Cir. 2006); H.F. Campbell Co. v. Commissioner, 53 T.C. 439, 447 (1969), affd. 443 F.2d 965 (6th Cir. 1971). The regulations promulgated under section 446 state: "The term 'method of accounting' includes not only the over-all method of accounting of the taxpayer but also the accounting treatment of any item." Sec. 1.446-1(a)(1), Income Tax Regs. Section 1.446-1(e)(2)(ii)(a), Income Tax Regs., provides the following discussion of changes of accounting method:

> A change in the method of accounting includes a change in the overall plan of accounting for gross income or deductions or a change in the treatment of any material item used in such overall plan. Although a method of accounting may exist under this definition without the necessity of a pattern of consistent treatment of an item, in most instances a method of accounting is not established for an item without such consistent treatment. A material item is any item which involves the proper time for the inclusion of the item in income or the taking of a deduction. * * *

To determine whether late-fee income is an item "which involves the proper time for the inclusion of the item in income" and, hence, is material under the regulation, we must determine whether a change in the treatment of late-fee income will change the taxpayer's lifetime income or will merely postpone or

accelerate the reporting of income.  See <u>Wayne Bolt & Nut Co. v.</u> <u>Commissioner</u>, 93 T.C. 500, 510 (1989) ("When an accounting practice merely postpones the reporting of income, rather than permanently avoiding the reporting of income over the taxpayer's lifetime, it involves the proper time for reporting income.").

Petitioners seek to change COB's and FSB's treatment of late-fee income from the current-inclusion method to a method where late-fee income creates or increases OID on the pool of credit card loans to which it relates.  Treatment as OID would reduce petitioners' 1998 and 1999 late-fee income considerably.[15] The reductions would result in corresponding increases in later years.  Petitioners would include all of the late-fee income under either method; the only difference being whether the income is recognized entirely in the year the fee is charged to the cardholder or whether the recognition of income is spread to subsequent years.  The difference is a matter of timing. Therefore, the proposed method constitutes a change in a material item in petitioners' overall plan of accounting and is a change in method of accounting.

The regulations detail certain situations that are not considered changes in method of accounting.  Section 1.446-1(e)(2)(ii)(b), Income Tax Regs., provides:

---

[15]Petitioners claim the reduction would be $209,143,757 and $219,698,496 in 1998 and 1999, respectively.

A change in method of accounting does not include correction of mathematical or posting errors, or errors in the computation of tax liability (such as errors in computation of the foreign tax credit, net operating loss, percentage depletion or investment credit). Also, a change in method of accounting does not include adjustment of any item of income or deduction which does not involve the proper time for the inclusion of the item of income or the taking of a deduction. For example, corrections of items that are deducted as interest or salary, but which are in fact payments of dividends, and of items that are deducted as business expenses, but which are in fact personal expenses, are not changes in method of accounting. * * * A change in the method of accounting also does not include a change in treatment resulting from a change in underlying facts. On the other hand, for example, a correction to require depreciation in lieu of a deduction for the cost of a class of depreciable assets which had been consistently treated as an expense in the year of purchase involves the question of the proper timing of an item, and is to be treated as a change in method of accounting.

The term "mathematical error" includes errors in arithmetic; i.e., "'an error in addition, subtraction, multiplication, or division'". Huffman v. Commissioner, 126 T.C. at 344 (quoting section 6213(g)); see also Repetti v. Jamison, 131 F. Supp. 626, 628 (N.D. Cal. 1955). Whatever "error" petitioners made in treating late-fee income under the current-inclusion method in 1998 and 1999, it was not a mathematical error.[16]

---

[16]Petitioners argue that they made a mistake of law by failing to treat late-fee income under sec. 1272(a)(6)(C)(iii), and that a mistake of law which affects the computation of a deduction under an established method of accounting, is "'tantamount to a mathematical error.'" Standard Oil Co. (Indiana) v. Commissioner, 77 T.C. at 383 (quoting North Carolina Granite Corp. v. Commissioner, 43 T.C. 149 (1964)). COB did not establish the OID method of accounting for late-fee income.

(continued...)

The term "posting error" means an error in "'the act of transferring an original entry to a ledger.'" Wayne Bolt & Nut Co. v. Commissioner, supra at 510-511 (quoting Black's Law Dictionary 1050 (5th ed. 1979)). In support of their position that section 1.446-1(e)(2)(ii)(b), Income Tax Regs., should be broadly construed, petitioners cite N. States Power Co. v. United States, 151 F.3d 876 (8th Cir. 1998). In that case, the court held that the taxpayer's failure to account for losses on nuclear fuel contracts in the same way it accounted for coal and oil losses was nothing more than a type of posting error. Id. at 884. The taxpayer, an energy company, was required by the Federal Energy Regulatory Commission (FERC) to use a prescribed method of accounting for book purposes. Id. The taxpayer's tax department was unaware that nuclear fuel losses were accounted for as a portion of work order capital accounts under the method prescribed by FERC. Id. Had the taxpayer's tax department known of the error, it would have been corrected; and nuclear fuel losses would have been treated in the same way as losses from other types of fuel. Id.

---

[16](...continued)
Therefore, there were no mistakes made under that method. Furthermore, the Court in Standard Oil did not hold that the taxpayer's mistake was tantamount to a mathematical error. The Court did so in North Carolina Granite Corp., a case which analyzed the regulations prior to the 1970 revisions, which gave consistency and timing considerations an important role. See Huffman v. Commissioner, 126 T.C. 322, 342-345 (2006), affd. 518 F.3d 357 (6th Cir. 2008).

Petitioners' error was not made in transferring late-fee income from their financial accounting books to their tax books. Petitioners were fully aware of the nature of late-fee income and how it was accounted for under financial accounting principles. Petitioners may not have been aware that late-fee income could be treated as increasing OID under the new statutory provision, but that is not akin to a posting error.

Because petitioners made neither a mathematical nor a posting error and because a change in the treatment of late-fee income is a change in the treatment of a material item, this issue appears to be resolved in respondent's favor. However, our discussion cannot end here.

B.   The Caselaw

This Court has previously noted that there appears to be an incongruity between section 1.446-1(e)(2)(ii)(b), Income Tax Regs., and "the proposition * * * evidenced by a body of caselaw (including cases of this Court), that a taxpayer does not change its method of accounting when it does no more than conform to a prior accounting election or some specific requirement of law." Huffman v. Commissioner, supra at 352.

Petitioners use that body of caselaw to argue that a change in the treatment of late-fee income is not a prohibited change in method of accounting. Petitioners cite numerous cases that were decided before the 1970 revisions to section 1.446-1(e), Income

Tax Regs.  E.g., <u>Beacon Publg. Co. v. Commissioner</u>, 218 F.2d 697 (10th Cir. 1955), revg. 21 T.C. 610 (1954); <u>Potter v. Commissioner</u>, 44 T.C. 159 (1965); <u>Wetherbee Elec. Co. v. Commissioner</u>, 73 F. Supp. 765 (W.D. Okla. 1947).  These cases do not address the consistency and timing considerations emphasized in section 1.446-1(e)(2)(ii), Income Tax Regs.  Therefore, their weight is uncertain.  See <u>Huffman v. Commissioner</u>, <u>supra</u> at 347.

The cases decided after 1970 on which petitioners rely are <u>Standard Oil Co. (Indiana) v. Commissioner</u>, 77 T.C. 349 (1981), and <u>Gimbel Bros., Inc. v. United States</u>, 210 Ct. Cl. 17, 535 F.2d 14 (1976).[17]  Petitioners equate the requirement of section 1272(a)(6)(C)(iii) with the elections made in those two cases, so that deviation from the chosen method and subsequent adherence to that method do not amount to changes in accounting method. Petitioners' argument fails for a number of reasons.  First, unlike the taxpayers in those cases, neither COB nor FSB adopted the OID method with respect to late-fee income.  Therefore, there was no deviation from or subsequent adherence to the OID method.

Second, these cases raise the issue of what "item" is being corrected.  In <u>Standard Oil</u> and <u>Gimbel Bros.</u> the correction was

---

[17]The Court notes that <u>Gimbel Bros., Inc. v. United States</u>, 210 Ct. Cl. 17, 535 F.2d 14 (1976), was decided by the Court of Claims and is therefore not binding on this Court.  Further, the case analyzes and applies prior regulations in effect before 1970.  The case is included because it was decided after issuance of the regulations in effect in the instant case.

made to a component of the material item, not to the item itself. In <u>Standard Oil</u>, the relevant item was intangible drilling costs (IDC). The taxpayer, in error, failed to deduct certain components of IDC, and this Court held that the retroactive correction of that error was permissible. <u>Id.</u> The Court stated the taxpayer's "position constitutes an attempt to remedy its failure to report similar items consistently under a fixed method of accounting." <u>Id.</u> at 383.

In <u>Gimbel Bros.</u>, the taxpayer was a department store which validly elected the installment method of accounting to report its installment sales income. The taxpayer applied the election to all installment sales except revolving or rotating charge accounts. <u>Id.</u> The taxpayer subsequently attempted to change its treatment of revolving charge accounts. <u>Id.</u> The Court held that revolving charge accounts were a component of installment sales and that therefore the taxpayer was correcting its error rather than changing an accounting method. <u>Id.</u>

Petitioners analogize the components of IDC and the components of installment sales income with the components of OID (late fees, cash advance fees, overlimit fees, and grace period interest).[18] Petitioners' analogy falls short of the mark. As discussed above, late-fee income, not interest (including OID) is

---

[18]Petitioners would also include interchange income as a component of OID. Whether interchange income is properly treated under sec. 1272(a)(6)(C)(iii) is still an issue before the Court.

the relevant item.  Late fees are earned for a purpose independent of the other components of COB's and FSB's OID.  The same cannot be said about the "other costs" the taxpayer in <u>Standard Oil</u> failed to deduct.  Those costs were expenses incurred during the first phase of the construction of offshore drilling platforms.  <u>Id.</u> at 361.  Costs for the other three phases of construction and installation of the platforms were deducted as IDC.  <u>Id.</u>  The four phases of construction and installation were interdependent in a way that late-fee income and the other types of credit card receivables are not.  The same can be said about the installment sales income the taxpayer in <u>Gimbel Bros.</u> failed to treat consistently with the rest of its installment sales income.  All of the installment sales income was earned in the same way, from the sale of goods on an installment plan.

Finally, more recent cases of this Court hold that a taxpayer does change its method of accounting when it changes its treatment of an item in order to adhere to a method adopted pursuant to a prior accounting election.  These cases cast doubt on <u>Standard Oil Co. (Indiana) v. Commissioner</u>, <u>supra</u>, and <u>Gimbel Bros. Inc. v. Commissioner</u>, <u>supra</u>.  See <u>Huffman v. Commissioner</u>, 126 T.C. at 353 ("We question whether there is vitality to the notion that a taxpayer conforming to a required but theretofore

ignored method of accounting does not change its method of accounting by so conforming.").

In <u>Sunoco, Inc. & Subs. v. Commissioner</u>, T.C. Memo. 2004-29, this Court held that a retroactive attempt to change treatment of certain mining expenses would be a change in method of accounting, and not a correction of an error, where the taxpayer had knowingly and consistently, albeit improperly, capitalized and amortized expenses that should have been included in the taxpayer's cost of goods sold. In <u>First Natl. Bank of Gainesville v. Commissioner</u>, 88 T.C. 1069 (1987), a transferee liability case, the transferee argued that the transferor's alteration of a LIFO inventory valuation procedure constituted the correction of an accounting error and not a change in method of accounting. The Court held that, although the alteration in question may have constituted the correction of an error, it also constituted a change in method of accounting pursuant to section 472(e). <u>Id.</u> at 1085. The Court added: "Where the correction of an error results in a change in accounting method, the requirements of section 446(e) are applicable." <u>Id.</u>

VII. <u>Conclusion</u>

Neither COB nor FSB received consent to change its method of accounting for late-fee income under section 446(e) in 1999. They continued to treat late-fee income under the current-inclusion method and did not deviate from that treatment until

the submission of their 2000 return.  A retroactive change in the treatment of 1998 and 1999 late-fee income is a change in the treatment of a material item and is therefore a prohibited change in method of accounting.  The "error" petitioners attempt to correct is neither a posting error nor a mathematical error, and petitioners are not entitled to correct that "error" with retroactive effect for 1998 and 1999 because to do so would be a prohibited change in method of accounting.  Accordingly, the Court holds that petitioners' requested recharacterization of late-fee income is an impermissible change in method of accounting under section 446(e).

To reflect the foregoing,

<u>An order will be issued denying petitioners' motion for partial summary judgment on the late fees issue and granting respondent's motion for partial summary judgment</u>.