T.C. Memo. 2020-45

UNITED STATES TAX COURT

JASON E. SHEPHERD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19146-18L.                          Filed April 13, 2020.

Jason E. Shepherd, pro se.

<u>Gary R. Shuler, Jr.</u>, for respondent.

MEMORANDUM OPINION

GUY, <u>Special Trial Judge</u>:  This collection review case involving a Federal

tax lien is an appeal from a notice of determination issued by the Internal Revenue

Service (IRS) Office of Appeals (Appeals Office).  The IRS seeks to collect trust

fund recovery penalties (TFRPs) assessed against petitioner pursuant to section

[*2] 6672 for the six quarterly periods ending September 30, 2010, through December 31, 2011 (taxable periods in issue).[1]

The case is before the Court on respondent's motion for summary judgment, with a supporting declaration, filed pursuant to Rule 121. Petitioner filed a response in opposition to respondent's motion. As discussed in detail below, we will grant respondent's motion and enter a decision sustaining the collection action.

## Background

The parties do not dispute the following background facts which are drawn from the pleadings, respondent's motion, a declaration executed by Settlement Officer Maria Smith and exhibits attached thereto, and petitioner's response to respondent's motion. Petitioner resided in Florida when the petition was filed.

I. Employment Taxes and Assessment of TFRPs

Petitioner was the chief executive officer of Advanced Care Ambulance Service, LLC (ACAS). Although ACAS filed Forms 941, Employer's Quarterly

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code), as amended and in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

**[\*3]** Federal Tax Return, for the taxable periods in issue, the company failed to remit the full amount of employment taxes due with those returns.

On January 14, 2013, Revenue Officer Tammy Russell (RO Russell), assigned to collect ACAS' employment taxes, prepared a Form 4183, Recommendation re: Trust Fund Recovery Penalty Assessment, recommending that TFRPs be assessed against petitioner as a "responsible person" for the taxable periods in issue.[2] RO Russell's immediate supervisor approved and signed the Form 4183 that same day.

On January 30, 2013, the IRS sent a Letter 1153, Trust Fund Recovery Penalty Letter, by certified mail addressed to petitioner's last known address. The Letter 1153 stated that the IRS proposed to assess TFRPs totaling $165,742 for the taxable periods in issue and offered petitioner the opportunity to request an administrative appeal. On February 19, 2013, the U.S. Postal Service returned the envelope bearing the Letter 1153 to the IRS undelivered and marked "UNCLAIMED UNABLE TO FORWARD". On July 22, 2013, the IRS assessed

---

[2]Sec. 6672(a) authorizes the assessment of TFRPs and provides that a responsible person who fails to collect or pay over any tax "shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over."

**[*4]** the TFRPs and sent petitioner a notice and demand for payment.  He did not remit payment.

II.  Notice of Intent to Levy and Administrative Proceedings

In October 2013 the IRS mailed a notice of intent to levy to petitioner regarding the unpaid TFRPs and informing him of the right to request an administrative hearing with the Appeals Office.  Petitioner responded by timely submitting a Form 12153, Request for a Collection Due Process or Equivalent Hearing, to the Appeals Office.

During the course of the administrative hearing that followed petitioner proposed an installment agreement as an alternative to the levy action and submitted financial information intended to persuade the Appeals Office that enforcement of the proposed levy would cause economic hardship.  After considering petitioner's financial standing, the Appeals Office concluded that the proposed levy would result in economic hardship and therefore placed petitioner's account in currently not collectible status.[3]

---

[3]Currently not collectible status is discussed in detail at Internal Revenue Manual pt. 5.16.1 (Sept. 18, 2018).

[*5] III.  Petitioner's Offer-in-Compromise and Administrative Proceedings

In March 2016 petitioner submitted an offer-in-compromise (OIC) to the IRS asserting that there was doubt as to his liability and offering $1 in full satisfaction of the TFRPs.  An IRS offer specialist investigated the matter and informed petitioner in April 2017 that his OIC had been rejected on the ground that there was no doubt as to his liability for the TFRPs.  Petitioner requested Appeals Office review of the rejection of his OIC.  By letter dated December 7, 2017, the Appeals Office informed petitioner that it had sustained the rejection of his OIC, explaining in relevant part:  "Your Doubt as to Liability Offer in Compromise proposal is rejected in full.  The Office of Appeals determined that part of the liability [for taxable periods ending in 2010] could be reduced, but doing so required you to sign an Offer in Compromise withdrawal form."  Petitioner did not withdraw his OIC.

IV.  Notice of Federal Tax Lien and Administrative Proceedings

In February 2018, after determining that petitioner's financial standing had improved, the IRS removed his account from currently not collectible status, filed a notice of Federal tax lien in respect of the unpaid TFRPs, and sent petitioner notice of that action and of his right to request an administrative hearing with the Appeals Office.  Petitioner submitted a timely request for an administrative

[*6] hearing and asserted that he should not be held liable for the TFRPs. He did not raise any other issue or offer a collection alternative to the lien.

The Appeals Office concluded that petitioner had a prior opportunity to challenge his liability for the TFRPs and was barred from reasserting that claim in accordance with section 6330(c)(2)(B). In the absence of any other issue for review the Appeals Office issued a notice of determination to petitioner sustaining the lien.

## V. Petition and Remand to the Appeals Office

Petitioner invoked the Court's jurisdiction by filing a timely petition for review of the notice of determination. In the petition and throughout this action petitioner has asserted that he should not be considered a responsible person who is subject to TFRPs in respect of ACAS' unpaid employment taxes.

After the petition was filed the Court granted respondent's motion to remand the case to the Appeals Office for further proceedings to consider whether the IRS had properly assessed the TFRPs. The Appeals Office reviewed that matter and issued a detailed supplemental notice of determination summarizing the background facts outlined above and concluding that the TFRPs were properly assessed.

**[*7]**                                     Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Either party may move for summary judgment upon all or any part of the legal issues in controversy. Rule 121(a). Summary judgment is warranted only if there is no genuine dispute of any material fact and the moving party is entitled to judgment as a matter of law. Rule 121(b); Naftel v. Commissioner, 85 T.C. 527, 529 (1985).

The moving party bears the burden of proving that no genuine dispute exists as to any material fact and that he is entitled to judgment as a matter of law. See FPL Grp., Inc. & Subs. v. Commissioner, 115 T.C. 554, 559 (2000); Bond v. Commissioner, 100 T.C. 32, 36 (1993); Naftel v. Commissioner, 85 T.C. at 529. In deciding whether to grant summary judgment the factual materials and inferences drawn from them must be considered in the light most favorable to the nonmoving party. See FPL Grp., Inc. & Subs. v. Commissioner, 115 T.C. at 559. Where a motion for summary judgment is properly supported, however, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d).

**[*8]** Respondent's motion for summary judgment is well founded based on the averments therein, the supporting declaration, and related exhibits. Although petitioner filed a response in opposition to respondent's motion, he has not identified any material fact that remains in dispute or presented a genuine issue for trial.

## I. Collection Due Process

Section 6321 provides that if any person liable to pay any tax neglects or refuses to pay the same after demand, the unpaid amount, including any interest, addition to tax, or assessable penalty, shall be a lien upon all property and rights to property belonging to such person in favor of the United States. Although section 6322 provides that the lien imposed by section 6321 generally arises when the tax is assessed, section 6323(a) provides that the lien is not valid as against certain of the person's creditors until a notice of lien is filed in accordance with section 6323(f).

Section 6320(a) provides that the Commissioner shall notify a person in writing when a notice of lien is filed under section 6323 and of the person's right to request an administrative hearing with the Appeals Office. If a person makes a timely request for an administrative hearing, the hearing will be held before an impartial officer or employee of the Appeals Office. Sec. 6320(b). For purposes

**[\*9]** of section 6320, subsections (c), (d), (e), and (g) of section 6330 generally apply. Sec. 6320(c).

When conducting administrative hearings in collection matters, the Appeals Office must verify that the requirements of any applicable law or administrative procedure have been met in processing the case. Sec. 6330(c)(1), (3)(A). The Appeals Office also must consider any issues raised by the person relating to the unpaid tax or collection action, including offers of collection alternatives, appropriate spousal defenses, and challenges to the appropriateness of the collection action. Sec. 6330(c)(2)(A), (3)(B). A person may challenge the existence or amount of the underlying tax liability if the person did not receive a notice of deficiency or did not otherwise have an opportunity to dispute such tax liability. Sec. 6330(c)(2)(B). Finally, the Appeals Office must consider whether the collection action balances the need for efficient collection against the person's concern that collection be no more intrusive than necessary. Sec. 6330(c)(3)(C).

The Court has jurisdiction under section 6330(d) to review administrative determinations in collection actions. Where the underlying tax liability is properly at issue, the Court will review the matter on a de novo basis. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the underlying liability is not properly at issue, the Court will review the administrative determination for

**[\*10]** abuse of discretion. <u>Id.</u> An abuse of discretion occurs if the Appeals Office exercises its discretion "arbitrarily, capriciously, or without sound basis in fact or law." <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999).

## II. <u>TFRPs</u>

Section 6672 imposes a penalty for the willful failure to collect, account for, and pay over income and employment taxes of employees. Section 6671 provides in relevant part that assessable penalties, including TFRPs under section 6672, shall be assessed and collected in the same manner as taxes against a person, including an officer or employee of a corporation, who is under a duty to comply with the requirements of section 6672.

## III. <u>Challenge to Underlying Liability</u>

As previously mentioned, a person may challenge the existence or amount of the underlying tax liability in a collection review proceeding if the person did not receive a notice of deficiency or did not otherwise have an opportunity to dispute such tax liability. Sec. 6330(c)(2)(B). Although petitioner did not receive a notice of deficiency,[4] the Appeals Office determined that he nevertheless had an earlier opportunity to challenge his liability for the TFRPs within the meaning of

---

[4]The assessment and collection of TFRPs are not subject to deficiency procedures. <u>See</u> <u>Mason v. Commissioner</u>, 132 T.C. 301, 317 (2009).

**[*11]** section 6330(c)(2)(B) and consequently was barred from reasserting that claim in the administrative proceeding concerning the lien at issue.

Respondent maintains that petitioner had two prior opportunities to contest his liability for the TFRPs. First, when he obtained Appeals Office review of the notice of intent to levy issued to him in 2013, and a second time in 2016 and 2017 when he submitted his OIC in respect of the TFRPs.[5]

Although the phrase "opportunity to dispute" is not defined in the Code, the Secretary has promulgated regulations regarding section 6330(c)(2)(B) pursuant to the authority prescribed in section 7805(a). Section 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs., states in pertinent part:

> Q-E2. When is a taxpayer entitled to challenge the existence or amount of the tax liability specified in the CDP Notice?
>
> A-E2. A taxpayer is entitled to challenge the existence or amount of the underlying liability for any tax period specified on the CDP Notice if the taxpayer did not receive a statutory notice of deficiency for such liability or did not otherwise have an opportunity to dispute such liability. Receipt of a statutory notice of deficiency for this purpose means receipt in time to petition the Tax Court for a redetermination of the deficiency determined in the notice of deficiency. An opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability. * * *

---

[5] Because we agree with respondent on the first point, we need not consider the impact of the administrative proceeding related to petitioner's OIC.

[*12] In <u>Lewis v. Commissioner</u>, 128 T.C. 48, 61 (2007), the Court upheld an earlier version of the regulation quoted above as a reasonable interpretation of section 6330 in the context of the assessment and collection of a tax not subject to the deficiency procedures. The Courts of Appeals that have reviewed the regulation have reached the same conclusion. See <u>Our Country Home Enters., Inc. v. Commissioner</u>, 855 F.3d 773, 787 (7th Cir. 2017); <u>Keller Tank Servs. II, Inc. v. Commissioner</u>, 854 F.3d 1178, 1199 (10th Cir. 2017); <u>Iames v. Commissioner</u>, 850 F.3d 160, 164 (4th Cir. 2017).

As the Court explained in <u>Lewis v. Commissioner</u>, 128 T.C. at 60-61:

> Ultimately, while it is possible to interpret section 6330(c)(2)(B) to mean that every taxpayer is entitled to one opportunity for a precollection judicial review of an underlying liability, we find it unlikely that this was Congress's intent. As we see it, if Congress had intended to preclude only those taxpayers who previously enjoyed the opportunity for judicial review of the underlying liability from raising the underlying liability again in a collection review proceeding, the statute would have been drafted to clearly so provide. The fact that Congress chose not to use such explicit language leads us to believe that Congress also intended to preclude taxpayers who were previously afforded a conference with the Appeals Office from raising the underlying liabilities again in a collection review hearing and before this Court.

The record reflects that petitioner was previously afforded a conference with the Appeals Office when he requested and obtained an administrative hearing regarding the notice of intent to levy issued to him in 2013. Although petitioner

[*13] had the opportunity to do so, he did not ask the Appeals Office to review his liability for the TFRPs. Instead, he persuaded the Appeals Office that immediate collection would cause economic hardship and as a result his account was placed in currently not collectible status.

Under these circumstances the Appeals Office correctly determined that petitioner had an earlier opportunity to challenge the TFRPs within the meaning of section 6330(c)(2)(B). See Bland v. Commissioner, T.C. Memo. 2012-84, 2012 WL 967651, at *7-*8 (holding that an equivalent levy hearing with the Appeals Office constituted a prior opportunity to dispute TFRPs under section 6330(c)(2)(B)). Consequently, we sustain the determination of the Appeals Office that petitioner was not entitled to challenge his liability for the TFRPs as part of the administrative proceeding under review.

IV. Verification--Validity of Assessments

We next consider whether the Appeals Office properly verified that the requirements of any applicable law or administrative procedure were met in processing petitioner's case. See sec. 6330(c)(1). We review the verification requirement for abuse of discretion, see Gardner v. Commissioner, 145 T.C. 161, 183 (2015), aff'd, 704 F. App'x 720 (9th Cir. 2017), and do so without regard to whether the taxpayer raised it at the Appeals Office hearing, see Hoyle v.

[*14] Commissioner, 131 T.C. 197, 202-203 (2008), supplemented by 136 T.C. 463 (2011).

A. Section 6751(b)(1)--Supervisory Approval

Section 6751(b) requires written approval of the initial penalty determination before the date when the taxpayer is first sent written notification of the penalties proposed. Clay v. Commissioner, 152 T.C. 223, 249 (2019); see also Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42. In Chadwick v. Commissioner, 154 T.C. __, __ (slip op. at 11-17) (Jan. 21, 2020), we recently confirmed that TFRPs are penalties within the scope of section 6751(b)(1) and as such may not be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination. We concluded that "Letters 1153 were the documents in which the IRS first formally communicated to * * * [the taxpayer] its definite decision to assert the TFRPs." Id. at __ (slip op. at 17).

The record shows that on January 14, 2013, RO Russell prepared a Form 4183 recommending that TFRPs be assessed against petitioner for the taxable periods in issue and her immediate supervisor approved and signed the form that same day. On January 30, 2013, the IRS sent a Letter 1153 to petitioner by

[*15] certified mail with the aim of notifying him of the proposed TFRP assessments. The TFRPs were assessed on July 22, 2013.

In the light of the steps outlined above and consistent with the Court's analysis in Chadwick, respondent satisfied the requirements of section 6751(b) in this case. In particular RO Russell's immediate supervisor authorized the assessment of the TFRPs in dispute before the IRS first attempted to notify petitioner (by Letter 1153) that TFRPs would be imposed against him. See Blackburn v. Commissioner, 150 T.C. 218, 223 (2018) (holding that the existence of a penalty approval form in the record was sufficient to establish the settlement officer's verification of assessments when the administrative record reflects compliance with administrative procedures).

B. Section 6672(b)(1)--Preassessment Notice

Before TFRPs may be assessed, the Commissioner normally must mail a Letter 1153 to the responsible person's last known address advising that a penalty will be assessed. Sec. 6672(b)(1). Although the IRS properly mailed Letter 1153 to petitioner by certified mail, addressed to his correct (last known) address, the U.S. Postal Service returned it to the IRS undelivered and marked "UNCLAIMED UNABLE TO FORWARD". Although petitioner did not actually receive the Letter 1153, it is well settled that the mailing of section 6672 notification to a

[*16] taxpayer's last known address is sufficient to advise a responsible officer of the assertion of a TFRP. See Mason v. Commissioner, 132 T.C. 301, 322-323 (2009) (citing Hickey v. Commissioner, T.C. Memo. 2009-2, for the proposition that where the notice has been mailed to the taxpayer's last known address, it is not necessary for the taxpayer to receive it before the Commissioner can assess a TFRP).

V. Conclusion

To recapitulate, the Appeals Office correctly determined that petitioner was barred from challenging his liability for the TFRPs in accordance with section 6330(c)(2)(B). Petitioner did not raise any other issue regarding the collection action or propose an alternative such as an OIC or an installment agreement. The Appeals Office properly verified that the requirements of any applicable law or administrative procedure were met in processing petitioner's case and otherwise did not abuse its discretion. Consequently, the Court will grant respondent's motion for summary judgment and enter a decision sustaining the collection action.

An appropriate order and decision

will be entered.